UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cherrity Honesty-Alexis Meranelli, | Case No. 23-cv-2260 (JWB/DJF) |
| Plaintiff, | |
| v. | **ORDER AND<br>REPORT AND RECOMMENDATION** |
| Jesse Ryan Pruette, | |
| Defendant. | |

This matter is before the Court on Plaintiff Cherrity Honesty-Alexis Meranelli's Motion for Leave to Amend the Complaint ("Motion to Amend") (ECF No. 160) and Defendant Jesse Ryan Pruette's Motion for Summary Judgment (ECF No. 133). The undersigned considers the matter pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. For the reasons stated below, the Court denies Plaintiff's Motion to Amend and recommends that Defendant's Motion for Summary Judgment be granted.

## BACKGROUND

### I.     Factual Background

The Minnesota Sex Offender Program ("MSOP") is a rehabilitative program administered by the Department of Human Services and designed to "provide specialized sex offender assessment, diagnosis, care, treatment, supervision, and other services to civilly committed sex offenders." Minn. Stat. § 246B.02. MSOP maintains a secure treatment facility in Moose Lake, Minnesota. *See* Minn. Stat. § 253D.02, subd. 13. Ms. Meranelli is an MSOP detainee at the Moose Lake facility ("MSOP-ML"), and she is a transgender woman. (*See* ECF No. 1 at 3.)

1

Mr. Pruette works as a Senior Central Services Administrative Specialist at MSOP-ML. (*See* ECF No. 137 at 1.) His duties include inspecting personal property that MSOP detainees order into the facility. (*Id.*) When Mr. Pruette conducts inspections, he is responsible for ensuring prohibited items are withheld and contraband notices are issued to the detainees who ordered the prohibited items. (*See* ECF No. 137 at 1.) MSOP detainees are subject to several prohibitions on incoming property, including a prohibition against clothing that violates MSOP's dress code. (*See id.*; 136-1 at 108, directing the withholding of incoming items deemed to be contraband; 136-1 at 100, defining contraband as including clothing that violates MSOP's dress code.) MSOP's dress code prohibits, among other things, "transparent clothing." (*See* ECF No. 136-1 at 91.)

Sometime in June 2023, Ms. Meranelli ordered an article of clothing she describes as a "transparent lace cover-up." (ECF No. 1 at 4; ECF No. 136-1 at 12.) She ordered it after she saw another MSOP detainee, O.Z., wearing what she believed to be a similar article of clothing. (*See* ECF No. 136-1 at 6; ECF No. 155 at 5.) O.Z. had ordered the item sometime before November 1, 2021, and acquired it on November 8, 2021. (*See* ECF No. 138 at 1; ECF No. 138-1 at 3-4, classifying item as a crotched "sweater".)

On June 13, 2023, Mr. Pruette inspected Ms. Meranelli's clothing order and deemed the cover-up to be contraband because it was transparent. (*See* ECF No. 137 at 4; ECF No. 137-1 at 2.) Pursuant to MSOP policy, he issued a contraband notice to Ms. Meranelli. (*See* ECF No. 137 at 4.) Ms. Meranelli did not submit a formal appeal of the decision, even though she knew she was allowed to do so. (*See* ECF No. 136-1 at 47, 71, 74.) Instead, this lawsuit followed.

**II.     Procedural History**

Ms. Meranelli filed her Complaint in this matter on July 31, 2023 ("Complaint") (ECF No. 1). Mr. Pruette answered the Complaint on November 14, 2023 (ECF No. 22). The Court entered

2

a Pretrial Scheduling Order on December 19, 2023. (ECF No. 32.) The Order set an amended pleadings deadline of January 31, 2024 and a dispositive motions deadline of June 21, 2024. (*Id.*) The Court later extended the dispositive motions deadline to November 1, 2024 (ECF Nos. 81, 129), but it did not extend the deadline for amended pleadings. Mr. Pruette filed his Motion for Summary Judgment on October 31, 2024 (ECF No. 133), and Ms. Meranelli filed her Motion to Amend the Complaint on January 17, 2025 (ECF No. 160).

## DISCUSSION

### I.  Motion to Amend the Complaint

#### A.  Legal Standard

Under Fed. R. Civ. P. 15(a), leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). But there is no absolute right to amend a pleading, and a motion to amend may be denied based on a finding of "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment." *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005) (internal quotations omitted). The decision whether to grant leave to amend is left to the sound discretion of the district court. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *Leftwich ex rel. Leftwich v. Cnty of Dakota*, 9 F.4th 966, 976 (8th Cir. 2021).

Additionally, "a motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause." *Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 977 (8th Cir. 2013) (citing Fed. R. Civ. P. 16(b)(4)). "[A]pplication of Rule 16(b)'s good-cause standard is not optional." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). A court determines whether good cause exists by examining "the movant's diligence in attempting to meet the [scheduling] order's requirements." *Harris v. FedEx Nat'l LTL, Inc.*,

3

760 F.3d 780, 786 (8th Cir. 2014); *see also Albright ex rel. Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 951 (8th Cir. 2019) ("The primary measure of good cause is the movant's diligence in attempting to meet deadlines."). A movant may also establish good cause if she can show "a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment of a party's pleading." *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). The movant also must be able to show that, despite her diligence, she could not reasonably have asserted her proposed claims in a timely manner. *See Sherman*, 532 F.3d at 716-17.

**B.     Analysis**

Ms. Meranelli's Motion to Amend comes almost *a whole year* after the deadline for amended pleadings passed. (*See* ECF No. 32.) The Court therefore must find good cause to allow the amendment under Rule 16 of the Federal Rules of Civil Procedure. *See Sherman*, 532 F.3d at 716. Ms. Meranelli asserts she should be granted leave to amend her Complaint because there is no evidence of prejudice to Mr. Pruette, an amendment would not be futile, and there is no evidence of a dilatory motive. (*See* ECF No. 161 at 3.) Mr. Pruette argues the Motion to Amend should be denied because it is "untimely, baseless, and [a] bad-faith attempt to further forestall resolution of this case." (*See* ECF No. 166 at 1.)

The Court agrees Ms. Meranelli's Motion to Amend is untimely. Ms. Meranelli fails to proffer any reason for why she could not have asserted her new claims in a timely manner. All the new claims in Ms. Meranelli's proposed amended complaint arise from the same occurrences in 2023 that gave rise to her original Complaint and are based on information known to her when she filed her original Complaint. (*See generally* ECF Nos. 160-1, 160-2.) Neither Ms. Meranelli's Motion to Amend nor her proposed amended complaint identifies any new evidence she may have

4

gathered after the deadline for amendment expired. (*See generally* ECF Nos. 160-1, 160-2, 161.) Ms. Meranelli does not argue she discovered new information that provided a basis for her new allegations or proffer any other reason as to why she did not assert them within the timeframe allowed under the Court's scheduling order. Ms. Meranelli's failure to make any showing of good cause for her significant delay in filing this motion mandates denial. *See Sherman*, 532 F.3d at 716-17.

The untimeliness of the Motion to Amend is alone sufficient cause for its denial, but the Court further finds that it is futile. "Denial of a motion for leave to amend on the basis of futility usually 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Lipsey v. SEECO, Inc.*, No. 4:16-CV-149 (JLH) (E.D. Ark. June 20, 2017) (quoting *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010)) (internal quotations omitted). In evaluating the sufficiency of the claims presented under Rule 12(b)(6), courts must accept all non-conclusory allegations as true and can only consider limited evidence outside the pleadings. *See Mitch v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Courts apply this standard on a motion to dismiss at the outset of a new case because, at the pleading stage, the parties have not yet had a fair opportunity to conduct discovery and develop an evidentiary record. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (Rule 12(b)(6) standard of review "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support claim); *Gay v. Wall*, 761 F.2d 175, 177 (8th Cir. 1985) (when court converts motion to dismiss into motion for summary judgment, opposing party must have reasonable opportunity to conduct discovery); *Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 916 (D. Minn. 2012) (declining to convert 12(b)(6) motion into motion for summary judgment

because case was in early stages, no discovery had been conducted, and disputes turned on witnesses' credibility). But when a plaintiff moves to amend her complaint after discovery has closed and summary judgment briefing is completed, this concern hardly applies. In such a scenario—as is the case here—a court may consider the evidence in the record and deny the motion as futile if nothing in the record supports the plaintiff's proposed amendments. *See Merrick Bank Corp. v. Chartis Specialty Ins. Co.*, No. 12-CV-7315 (RJS), 2015 WL 4126780, at *1 (S.D.N.Y. July 7, 2015) (citing *Summit Health. Inc. v. APS Healthcare Bethesda, Inc.*, 991 F. Supp. 2d 379, 404 (S.D.N.Y. 2014)); *Nukic v. Home-Grown Industries of Georgia, Inc.*, No. 1:04-CV-2549 (WSD/CCH), 2005 WL 8154914, at *8 (N.D. Ga. Sept. 20, 2005); *Blodgett v. Grand Traverse Cnty*, No. 1:03-CV-147 (RJJ), 2010 WL 11534613, at *2 (W.D. Mich. Sept. 7, 2010).

Ms. Meranelli's proposed amendments fall within two categories: (1.) allegations identifying other MSOP detainees, who Ms. Meranelli allege were situated similarly and treated differently than she was; and (2.) new causes of action, including viewpoint discrimination, discrimination under the Minnesota Human Rights Act ("MHRA"), inadequate medical care, and common law negligence. (*See* ECF No. 161 at 3; ECF No. 160-1.) The first category of amendments is futile because, as explained below, these newly identified individuals are not adequate comparators for her class-of-one claim and therefore do not change the Court's ultimate conclusion that her claim lacks adequate support to create a genuine issue of material fact. The second category of amendments is futile because Ms. Meranelli has not proffered any evidence to substantiate her new claims. *See Blodgett*, 2010 WL 11534613, at *2 (denying motion to amend the complaint as futile because no evidence in the record supported plaintiff's proposed amendments).

6

Ms. Meranelli's proposed Amended Complaint does not clearly specify the grounds for her viewpoint discrimination claim, but the Court liberally construes it as alleging Mr. Pruette withheld Ms. Meranelli's cover-up because of her viewpoint concerning access to gender-affirming clothing. (*See* ECF No. 160-1 at 6, adding new allegation that Mr. Pruette stated "men" should not wear women's clothing.) But the main premise of Ms. Meranelli's case is that Mr. Pruette allowed other transgender women at MSOP to receive similar clothing. (*See* ECF No. 160-1 at 5-6, alleging, "O.Z. and D.R. is a transgender female patient, just as is Ms. Meranelli" and "the Defendant processed both of the Cover-ups for O.Z. and D.R. and Ms. Meranelli, while allowing O.Z. and D.R. to have their Cover-up and disallowing Ms. Meranelli to have hers.") Her viewpoint discrimination claim is therefore untenable because her own allegations undermine it. Her MHRA claim is not viable for the same reason. *See* Minn. Stat. § 363A.12 (proscribing discrimination on the basis of gender identity in the "access to, admission to, full utilization of or benefit from any public service"); *Olson v. Comty. Action P'ship of Hennepin Cnty*, No. 27-CV-23-12568, 2025 WL 301834, at *6 (Minn. Ct. App. Jan. 27, 2025) (finding summary judgment proper when plaintiff's own allegations contradict allegation of discrimination under MHRA).

Ms. Meranelli's inadequate medical care claim fares no better. To state a claim of inadequate medical care, Ms. Meranelli must allege Mr. Pruette "knew about excessive risks to [her] health but disregarded them, and that [his] unconstitutional actions in fact caused [her] injuries." *Karsjens v. Lourey*, 988 F.3d 1047, 051-52 (8th Cir. 2021) (quoting *Senty-Haugen v. Goodno*, 462 F.3d 876, 889-90 (8th Cir. 2006)) (internal quotations omitted). Ms. Meranelli's implicit assertion that the withholding of a specific article of clothing creates excessive risks to her health is patently absurd. *Cf. Senty-Haugen*, 462 F.3d at 890 (affirming summary judgment on the ground that Minnesota Sex Offender Program employees reasonably delayed treatment of

7

plaintiff's *broken leg*). Unsurprisingly, Ms. Meranelli fails to proffer evidence of any physical or psychological injuries she has suffered as a result of the cover-up being withheld from her. This claim has no merit and should be rejected.

Finally, Ms. Meranelli's negligence claim fails to state a claim and lacks supporting evidence. To state a prima facie case of negligence, a plaintiff must adequately allege that: (1.) the defendant owed the plaintiff a duty of care; (2.) the defendant breached that duty of care; (3.) the plaintiff suffered an injury; and (4.) the breach was the cause of the plaintiff's injury. *See Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011). Ms. Meranelli's allegations fall short of stating a claim for negligence because she does not identify any duty of care under Minnesota common law that Mr. Pruette allegedly breached. (*See* ECF No. 160-1 at 7.) Insofar as Ms. Meranelli alleges Mr. Pruette owed her a duty to reasonably apply MSOP's contraband policy, she has offered no evidence to suggest his enforcement of the policy was unreasonable.

For the above stated reasons, Ms. Meranelli's Motion to Amend is both untimely and futile. The Court denies it accordingly.

**II.     Motion for Summary Judgment**

    **A.     Standard of Review**

On a motion for summary judgment, the Court must view "all evidence and inferences in the light most favorable to the non-moving party." *Pena v. Kindler*, 187 F. Supp. 3d 1070, 1076 (D. Minn. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate when, in this light, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Pena*, 187 F. Supp. at 1076.

The movant "bears the initial responsibility of informing the district court of the basis for [his] motion," and must identify "those portions of [the record] … which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A); *Pena*, 187 F. Supp. 3d at 1076.  If the movant meets that burden, the nonmovant "may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue for trial." *Davenport v. Univ. of Ark. Bd. of Trustees*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247–49).  Moreover, the nonmovant cannot "create sham issues of fact in an effort to defeat summary judgment." *Am. Airlines, Inc. v. KLM*, 114 F.3d 108, 111 (8th Cir. 1997); *see also Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021).  If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the Court may: "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is entitled to it; or (4) issue any appropriate order." Fed. R. Civ. P. 56(e).

Ms. Meranelli appears in this matter pro se, and the Court recognizes that her pleadings must be liberally construed given her lack of legal expertise. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  But the Court nonetheless must apply Rule 56 and its requirements fairly. *See Sisney v. Kaemingk*, 886 F.3d 692, 697 (8th Cir. 2018).  "Like any other civil litigant, [Plaintiff is] required to respond to [Defendant's] motion with specific factual support for [her] claims to avoid summary judgment." *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) (citation omitted).

### B. Analysis

Mr. Pruette argues Ms. Meranelli's claims should be dismissed because: (1.) the nature of the conduct at issue precludes class-of-one claims (ECF No. 135 at 18); (2.) Ms. Meranelli cannot

9

satisfy all the elements of a class-of-one claim (*id.*); (3.) with respect to any claim for monetary damages, sovereign immunity bars recovery against him in his official capacity, qualified immunity bars recovery against him in his individual capacity, and Ms. Meranelli has failed to provide any evidence to support a monetary damages claim (*id.* at 28); and (4.) with respect to any claim for injunctive relief, 42 U.S.C. § 1983 does not allow for such relief against individual-capacity defendants, Ms. Meranelli's proposed injunctive relief bears no relationship to her claims in the case, and granting Ms. Meranelli's requested relief would unduly intrude on MSOP operations (*id.* at 31-33).

### 1.  Class-of-One

The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall … deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  This provision allows claims by a "'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)) (internal quotations omitted).  This is a "demanding standard." *Id.*  But not all forms of state action are subject to class-of-one claims.  "[A] class-of-one claim does not extend to cases where the rules are uniformly applicable and a state official exercises his 'discretionary authority based on subjective, individualized determinations.'" *Novotny v. Tripp Cnty*, 664 F.3d 1173, 1179 (8th Cir. 2011) (quoting *Enquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008)).

i.       **Discretionary Authority Limitation**

As a threshold matter, Ms. Meranelli's claim fails because the conduct at issue cannot be challenged on a class-of-one basis. MSOP's contraband policy prohibits detainees from wearing "transparent clothing" in order to promote "a safe, secure and therapeutic environment for clients,[1] staff and the public." (*See* ECF No. 136-1 at 91-92, 97, 100.) Whether an article of clothing is "transparent" may be a matter of discretionary judgment. For example, a loosely-crotched sweater or a dark plastic raincoat may appear transparent to one person but not another. And even if an article of clothing is plainly transparent (such as a COVID face shield or a transparent jacket designed to be worn over other clothing), its typical use may not violate the purpose of the policy, such that an employee may not classify it as contraband. (*See* ECF No. 137 at 3.) MSOP's contraband and dress code policies include similar examples of other broad prohibitions that require MSOP employees to exercise their judgment. (*See, e.g.*, ECF No. 136-1 at 92, prohibiting clothes that are not "in good repair and fit properly"; *id.* at 100, prohibiting: "Material or items usable to alter one's appearance; Clothing, which in combination resembles a staff uniform or staff uniform shirt, or any clothing resembling emergency personnel; … Excessive amounts of authorized items or possessions …; [and] Any materials deemed to be detrimental to the safety or health of clients".) It is unsurprising that these policies proscribe general categories of items since specifying every possible thing that could be detrimental to MSOP's purposes would be an impossible and impractical feat. Instead, MSOP relies on its employees to be familiar with the language and purpose of its property inspection policies and to use their discretion in applying them. (*See* ECF No. 136-1 at 107-08; ECF No. 137 at 1-3.) In other words, MSOP grants

---

[1] MSOP routinely refers to its detainees as "clients." (*See, e.g.,* ECF No. 136-1 at 91.)

11

employees like Mr. Pruette "discretionary authority based on subjective, individualized determinations" to enforce uniformly applicable rules. *Novotny*, 664 F.3d at 1179 (quoting *Enquist*, 553 U.S. at 602-03). Mr. Pruette relied on that authority when he intercepted Ms. Meranelli's cover-up. (*See* ECF No. 137 at 4.)

Ms. Meranelli argues the discretionary authority limitation announced in *Enquist* only applies in the public employment context. (*See* ECF No. 154 at 13-14.) The Court is not persuaded. The Supreme Court reached its conclusion in *Enquist* based on principles that broadly apply. *See Enquist*, 553 U.S. at 604 ("It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized. This principle applies most clearly in the employment context…."). Though the Court stated the principle applies "most clearly" to employment, it in no way limited its application to that context. Indeed, the Court relied on a hypothetical unrelated to public employment to explain the limits of class-of-one claims. *Id.* at 603-04 (hypothetical traffic officer must use discretion when enforcing speed limit on highway where drivers regularly exceed the limit). Additionally, as Ms. Meranelli concedes (*see* ECF No. 154 at 14), the Eighth Circuit has relied on *Enquist*'s underlying principles to limit class-of-one claims outside the public employment context. *See Flowers v. City of Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009) (applying *Enquist* to police officer's investigative decisions); *Novotny v. Tripp Cnty*, 664 F.3d 1173, 1179 (8th Cir. 2011) (applying *Enquist* to county's enforcement of weed abatement ordinance). This Court sees no reason to limit application of *Enquist*'s principles here. Because Mr. Pruette reasonably exercised his discretion in enforcing the MSOP policy against "transparent" clothing, his decision is not properly subject to challenge, and Ms. Meranelli's class-of-one claim should be dismissed for that reason alone.

### ii. Absence of Comparators

Ms. Meranelli's claim also fails because she has not presented adequate evidence to show she was treated differently than another similarly situated person. Mr. Pruette points to multiple pieces of evidence to establish that Ms. Meranelli was not treated differently than any other person who was similarly situated. (*See* ECF No. 135 at 23-26, evidence showing that: different personnel inspected Ms. Meranelli's clothing and O.Z.'s clothing (citing ECF No. 138); O.Z.'s primary therapist approved her clothing, while Ms. Meranelli did not obtain approval from her primary therapist (citing ECF No. 138 ¶ 5); the articles of clothing were different based on a variety of visual characteristics (citing ECF Nos. 137, 138); and consistent enforcement of prohibition on transparent clothing against other MSOP detainees (citing ECF No. 136-1 at 176-82).) Ms. Meranelli thus needed to present contradictory evidence adequate to create a genuine issue of material fact. *See Davenport*, 553 F.3d at 1113. Specifically, Ms. Meranelli needed to present evidence to establish the existence of at least one comparator (i.e., someone similarly situated who was treated more favorably).

In her original Complaint, Ms. Meranelli alleged the existence of an anonymous comparator who ordered a similar article of clothing and who Mr. Pruette treated more favorably. (*See* ECF No. 1 at 5; ECF No. 138-1 at 3.) Ms. Meranelli subsequently identified that person as O.Z. (*See* ECF No. 136-1 at 21, 141-42.) But O.Z. is an inadequate comparator because Amanda Hyke, a Senior Central Services Administrative Specialist at MSOP-ML, inspected O.Z.'s article of clothing. (*See* ECF No. 138 at 1; ECF No. 138-1 at 2-4; ECF No. 156 at 74.) Ms. Meranelli's claim is premised on the allegation that Mr. Pruette treated her differently than how he treated other, similarly-situated MSOP detainees. (*See* ECF No. 1 at 2.) Since O.Z. was not subject to

13

Mr. Pruette's treatment with respect to the clothing item at issue, she is not an adequate comparator.

Ms. Meranelli attempts to create a fact issue as to who actually inspected O.Z.'s article of clothing. She asserts that Mr. Pruette processed O.Z.'s clothing and alleges she had a conversation with Mr. Pruette in which he admitted to doing so. (*See* ECF No. 154 at 18.) She offers her own self-serving affidavit to support this allegation, and she attested to that effect in discovery. (*See* ECF No. 155 ¶ 21; ECF No. 136-1 at 6-7, 144.) However, contemporaneous MSOP property records establish that Ms. Hyke processed O.Z.'s clothing item; not Mr. Pruette (ECF No. 138-1 at 2-4). Although the Court generally must view the facts and any reasonable inferences in the light most favorable to Ms. Meranelli, it does not need to accept her factual allegations as true when they are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Moore v. Hamel*, No. 18-1279, 2019 WL 1224657, at *2-3 (6th Cir. Jan. 28, 2019) (affirming summary judgment when evidence in the record plainly refuted plaintiff's allegation that defendant removed documents from legal mail and told plaintiff he did so). Ms. Meranelli does not contend the property records were fabricated, and the Court sees no reason to discredit their authenticity. Indeed, Ms. Meranelli expressly relies on these contemporaneous records as evidence in opposition to Mr. Pruette's Motion for Summary Judgment. (*See* ECF No. 154 at 6, citing Plaintiff's Exhibit VII, ECF No. 156 at 72-74.) "A party cannot avoid summary judgment by contradicting [her] own evidence." *Chamblis v. Bland*, No. 5:17-cv-254 (KGB/JTR), 2019 WL 1373677, at *6 (E.D. Ark. Mar. 4, 2019), *report and recommendation adopted*, 2019 WL 1372743 (E.D. Ark. Mar. 26, 2019); *see also Danker v. City of Council Bluffs*, 53 F.4th 420, 424 (8th Cir. 2022) (affirming summary judgment when plaintiff's own evidence contradicted argument that City's method of identifying dog breeds was irrational).

Since the unchallenged, contemporaneous record shows Ms. Hyke processed O.Z.'s item of clothing, and Ms. Meranelli's own claim hinges on the authenticity of that record, the Court concludes no reasonable juror would believe Ms. Meranelli's self-serving testimony. Ms. Meranelli has therefore failed to create a *genuine* issue of material fact on this issue.[2]

Ms. Meranelli's Complaint names only a singular comparator (*see* ECF No. 1 at 5)[3], but she introduced another comparator, D.R., during her deposition in this matter. (*See* ECF No. 136-1 at 21.) Like O.Z., D.R. is not an adequate comparator because the evidence reflects that Mr. Pruette did not inspect D.R.'s clothing items. (*See* ECF No. 138 at 1-2; ECF No. 138-1 at 4.) Ms. Meranelli contests this fact based solely on her own affidavit, which baldly asserts that Mr. Pruette processed D.R.'s cover-up. (*See* ECF No. 154 at 18; ECF No. 155 at 7). The Court rejects this claim because it is wholly unsupported. Rule 56 of the Federal Rules of Civil Procedure requires that, at the summary judgment stage, affidavits "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant … is competent to testify on the matters stated." Ms. Meranelli fails to establish any basis for her knowledge that Mr. Pruette processed D.R.'s cover-up. Her statement is nothing more than a conclusory allegation, and therefore, the

---

[2] The Court further observes that, based on the photographs attached to Ms. Meranelli's supporting memorandum, the two items of clothing are not the same. (*Compare* ECF No. 156 at 76, *with id.* at 78.) Though the items are similar in some respects, Ms. Meranelli cannot plausibly allege they are "identical or directly comparable … in all material respects." *Robbins*, 794 F.3d at 996 (8th Cir. 2015) (quoting *Reget*, 595 F.3d at 695) (internal quotations omitted).

[3] Ms. Meranelli alleges that she intended to reference multiple individuals and that her *nine* uses of the singular "Doe" were typing errors. (*See* ECF No. 136-1 at 57, 162.) The Court finds this explanation implausible because of her consistent use of the singular in the Complaint and her shoehorning of an ever-growing list of individuals into this alleged error. (*Compare id.* at 162, stating "Doe" was intended to include O.Z. and D.R., *with* ECF No. 154 at 16, adding "L.J." as another comparator.)

15

Court cannot consider it.  *See Edmonds v. Minneapolis Pub. Sch. Special Sch. Dist. 1*, 368 F. Supp. 3d 1329, 1339 (D. Minn. 2018); *Miller v. Solem*, 728 F.2d 1020, 1026 (8th Cir. 1984).

In her opposition memorandum, Ms. Meranelli seeks to add yet another comparator, L.J., to her expanding list.  (*See* ECF No. 154 at 16-18.)  But she offers no support at all for her claim that L.J. is similarly situated.  Her own evidence shows that Mr. Pruette did not inspect L.J.'s clothing or classify it as contraband (*see* ECF No. 156 at 70, reflecting that Ms. Hyke processed the item at issue), and Ms. Meranelli does not even allege that he did (*see generally* ECF Nos. 154, 155).  The fundamental premise of Ms. Meranelli's claim is that Mr. Pruette treated her differently than how *he* treated other similarly situated persons.  (*See* ECF No. 1 at 2.)  Because Ms. Meranelli does not allege L.J. was subject to Mr. Pruette's treatment, L.J. is not an appropriate comparator.

### iii.     Lack of Evidence of Intent

Finally, Ms. Meranelli's claim fails because she has proffered no competent evidence of discriminatory intent.  For her class-of-one claim to succeed, Ms. Meranelli must present adequate evidence that Mr. Pruette purposefully singled her out.  *See Olech*, 528 U.S. at 564; *Robbins*, 794 F.3d at 995 (quoting *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 3512 (1918)) ("The good faith of state officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party.").  Ms. Meranelli presents a non-specific allegation that she has "challenged [Mr. Pruette's] authority on multiple occasions when it came to the denial of her clothing for her transgender needs."  (ECF No. 154 at 23.)  This statement is not supported by any evidence in the record, *cf.* Fed. R. Civ. P. 56(c)(1)(A), points to her behavior—not his,  and is so deficient in detail that it amounts to little more than a conclusory allegation, *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990) (finding general averments inadequately specific to create genuine dispute about a material fact); *Sundae v. Anderson*, No. 02-CV-855 (JRT/SRN),

16

2003 WL 24014341, at *8 (D. Minn. April 24, 2003) (granting summary judgment on equal protection claim based on assertion that defendants conspired against plaintiffs because plaintiffs filed discrimination complaints in the past). Ms. Meranelli's class-of-one claim should be dismissed because she has failed to support it with any evidence of Mr. Pruette's alleged discriminatory intent.

Ms. Meranelli's class-of-one claim improperly challenges a discretionary decision and is unsupported by evidence of similarly-situated comparators or discriminatory intent. The Court recommends Mr. Pruette's Motion for Summary Judgment be granted for each of these reasons.

    **2.**    **Remedies**

        **i.**    **Qualified Immunity**

Other limitations further prevent Ms. Meranelli from securing all the remedies she seeks in her Complaint. Mr. Pruette asserts the defense of qualified immunity as a bar to monetary relief. (*See* ECF No. 135 at 28.)[4] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> In determining whether qualified immunity should apply, the court engages in a two-step inquiry. First, [the court] must determine whether a constitutional right has been violated. Then, "the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct." While [courts] are not required to apply the steps sequentially, "it is often beneficial" to do so.

---

[4] Ms. Meranelli does not seek monetary relief against Mr. Pruette in his official capacity. (*See* ECF No. 154 at 26.)

*Ross v. City of Jackson*, 897 F.3d 916, 920 (8th Cir. 2018) (quoting *Pearson*, 555 U.S. at 232, 236).

Courts cannot rely on generalized statements of the law in defining the right that a defendant has allegedly violated. *See White v. Pauly*, 580 U.S. 73, 79 (2017); *Lewis v. City of St. Louis*, 932 F.3d 646, 649 (8th Cir. 2019). Instead, the right must be "particularized to the facts of case." *White*, 580 U.S. at 79. In deciding whether the right has been clearly established, case law must establish the right "beyond debate." *Lewis*, 932 F.3d at 649.

Mr. Pruette is entitled to qualified immunity based on both elements of the doctrine. First, as previously discussed, Mr. Pruette did not violate Ms. Meranelli's constitutional rights when he withheld her cover-up. Second, there is no case law that clearly establishes that civil detainees have a right to perfectly consistent enforcement of general and uniformly applicable rules.

Ms. Meranelli asks the Court to define the right at issue as being free from arbitrary decisions that give rise to class-of-one claims. (*See* ECF No. 154 at 28.) But the doctrine of qualified immunity calls for a more particularized definition of constitutional rights. *See Thurmond v. Andrews*, 972 F.3d 1007, 1013 (8th Cir. 2020). The purpose of the doctrine is to shield government officials from personal monetary liability in circumstances in which they must exercise discretionary decision-making without the benefit of clear guidance on the legality of their options. *See Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987); *Davis v. Scherer*, 468 U.S. 183, 195-196 (1984). There was no bright-line rule, policy, or other requirement dictating that Mr. Pruette must allow Ms. Meranelli to retain her cover-up under the circumstances she alleges. Ms. Meranelli's monetary damages claim thus would unfairly subject Mr. Pruette to personal liability when no court has previously held that such a constitutional right exists and no "reasonable official would have understood what he is doing violates [a constitutional] right."

*Thurmond*, 972 F.3d at 1013 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)) (internal quotations omitted). The Court declines to apply Ms. Meranelli's overly broad definition of the alleged constitutional right at issue and finds qualified immunity bars her claim for monetary relief.

### ii. Injunctive Relief

Ms. Meranelli also seeks injunctive relief against Mr. Pruette in his official capacity.[5] Specifically, she asks that he be ordered to: (1.) give her *all* her property that is on a "litigation hold (including but not limited to: all clothing, shoes, the Cover-up, etc…)" (ECF No. 1 at 7); and (2.) grant her an "exemption from clothing and contraband policies" (ECF No. 154 at 29; ECF No. 1 at 7). "But to receive injunctive relief, a relationship must exist 'between the injury claimed … and the conduct asserted in the complaint.'" *Schuett v. LaRiva*, No. 15-CV-4207 (WMW/SER), 2017 WL 123427, at *3 (D. Minn. Jan. 12, 2017) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). Ms. Meranelli claims Mr. Pruette treated her differently with respect to *one particular* article of clothing. She does not challenge the withholding of other clothing items or the legality of MSOP's contraband policy generally. (*See generally* ECF No. 1.) Ms. Meranelli's far-reaching demand for benefits that lack any nexus to her alleged injuries is improper and should be rejected.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Cherrity Honesty-Alexis Meranelli's Motion to Amend the Complaint (ECF No. 160) is **DENIED**.

---

[5] Ms. Meranelli does not seek injunctive relief against Mr. Pruette in his individual capacity. (*See* ECF No. 154 at 29.)

19

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendant Jesse Ryan Pruette's Motion for Summary Judgment (ECF No. 133) be **GRANTED**.

Dated: March 25, 2025
*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

## NOTICE

### Order

**Filing Objections**: This Order is not appealable to the Eighth Circuit Court of Appeals until the conclusion of this matter.

Under Local Rule 72.2(a)(1), "a party may file and serve written objections to the order within 14 days after being served a copy" of the order. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(a)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

### Report & Recommendation

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).